UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

HAROLD HIRSCH,                                          · Index No. $17 - 965$

                           Plaintiff,           VERIFIED COMPLAINT

              -against-                    JURY TRIAL
                                  DEMANDED

THE CITY OF NEW YORK, CITY OF NEW YORK
DEPARTMENT OF BUILDINGS, DEPARTMENT OF
ENVIRONMENTAL PROTECTION, JOHN DOE DOB
AND DEP OFFICIALS/INSPECTORS (THE NAME
JOHN DOE BEING FICTITIOUS, AS THE TRUE
NAME ARE PRESENTLY UNKNOWN),

                           Defendants,
-----------------------------------------------------------------------X

The Plaintiff, complaining by his attorney(s), the Law Office of Lawrence J.

Fredella, P.L.L.C., respectfully shows to this Court and alleges:

## JURISDICTION

1.     Jurisdiction is founded upon the existence of a Federal Question.

2.     This is an action to address the following:

   A.   Violations committed by the Defendants with respect to prohibited activities

falling under 18 U.S.C. section 1962 (Racketeering) and also arising under the laws and

statutes of the U.S. State of New York; and 18 USC 241; Conspiracy against Plaintiff's

rights;

   B.   Deprivation under color of statute, ordinance, regulation, custom, or usage of

rights, privileges, and immunities secured to the Plaintiff by the Fifth and Fourteenth

Amendments to the Constitution of the United States pursuant to 42 U.S.C. Section 1983,

1985, and arising under the law and statutes of the US, and State of New York.

3.     Jurisdiction is founded upon 18 U.S.C. sections 1964, 28 U.S.C. Sections 1331,

1343(3) and 1343(4), this being an action authorized by law to redress the deprivation

under the color of law, statute, ordinance, regulation, custom and usage of rights,

privileges and immunities secured to Plaintiffs by the Fifth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

4.     Venue lies in this District pursuant to 18 U.S.C. section 1965, and 28 U.S.C. Section 1391(b) (2) since the events occurred in the Southern District.

## THE PARTIES

5.     Plaintiff HAROLD HIRSCH lives in 666 West End Avenue, Apt 8B, New York, N.Y.   This location of 666 West End Avenue, Block 1240, Lot1 is hereinafter, "the Subject Premises."

6.     Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

7.     Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the New York City Department of Buildings., including all the DOB Building Inspectors thereof.

8.     Upon information and belief, at all times hereinafter mentioned, Defendant DOB, DOB building inspectors, John DOE -unknown number, DOB officials, and DEP officials/employees, were employed by the Defendant CITY OF NEW YORK, as members of their respective divisions; DOB or DEP.

9.     Upon information and belief, at all times hereinafter mentioned, all Defendant DOB Building Inspectors, be they known or unknown, worked out of the respective

2

division of the Borough of Manhattan, New York; all DEP inspectors/officials worked out of Flushing, New York.

10. The New York City DOB and DEP, are local governmental agencies, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the bureau chiefs of the New York City Department of Buildings and DEP is responsible for the policies, practices, and customs of the New York City Department of Buildings. as well as the hiring, screening, training, supervising, controlling and disciplining of its DOB Building Inspectors and civilian employees, and is the final decision maker for that agency.

11. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

### BACKGROUND

12. Upon information and belief, the owners met to plan and discuss the scheme to purchase a building with rent-stabilized apartments, to deregulate them, and then make a huge profit at the re-renting or sale of each apartment. The City of New York, and its agencies and employees, were complicit in the scheme. The City failed numerous times to stop the owners from filing false documents, or documents containing false information. The city continuously looked the other way and allowed these false documents to be certified.

13. The City had received an endless plea of complaints from the tenants at 666 West End Avenue. These tenants continuously cried for help to the City of New York to the point where the entire 311 system of the City of New York collapsed. This resulted in the 311 system being redesigned. After receiving countless daily complaints with respect to this building, the City of New York continuously did nothing.

3

14.     We base this on the fact that all PW1 applications were all fraudulent in the exact same way, ALL DOB violations that we cited in our civil lawsuit filed in New York State court under index #150788-15 from 2014, 2015 and 2016, have now as of December 2016, been either removed completely (wiped clean) from the DOB website, which is supposed to be open to all public inquiry, (older violations that we did not address, whether resolved or dismissed, remained on the website); that there have been suspicious activities by the DOB employees removing various online documents that supported our case, such as building code violations, which raised red flags;

15.     That Subject Premises Owners, Moshe Azogui, Yan Ouaknine, (Aore Holdings) are partners with Laurence Gluck, (Stellar Management), Windermere Owners LLC, and were backed financially in this purchase by Signature Bank, and other investors listed as John Does, and that they did purchase the Subject Premises on, or about, November 18, 2010.   The scheme was to illegally de-regulate rent-stabilized apartments, destroying the necessities of such apartments in order to force out the indigent tenants and then make said apartment market rate and demand substantially more money for said apartment.

16.     That from 1983 through the present time, the Plaintiff, HAROLD HIRSCH, was a lawful tenant in the Subject Premises;  he first lived in apartment 12N for approximately three (3) years, became disabled; and then moved into a smaller apartment 8B, always lawfully residing at the Subject Premises.

17.     That Plaintiff is disabled, as defined by law in the Social Security Act, Title XVI, adjudicated by Administrative Law Judge Wallace Tannenbaum, on October 27, 2000; these disabilities through the years have restricted Plaintiffs ability to leave the apartment for days, weeks, or up to six months at a time.

## THE SCHEME TO DEFRAUD

4

18.     The city allowed the owners to file PW1 applications with clearly false information. The owners used the work applications and extended their use to include renovation, reconfiguration and combination of apartments, architectural work, plumbing work, and ripping out all the elevators, washing machines, dryers, and every nut, bolt, and the walls, floors, and ceilings, of the entire building. For five (5) years there was no access for disabled tenants that created further inconvenience and stress. Defendants claimed there would be no change of use, occupancy or egress; signed off by Moshe Azogui. This was audited by the Department of Buildings and approved on May 31, 2011. This application contained two (2) major lies or false statements: (1) That this building was vacant; and (2) that there were no rent-stabilized apartments in this building. A simple check on DOB computers would have easily verified that these assertions were in fact false. Thus, the City of New York is liable for these actions.

19.     Throughout 2011-2016, work applications were used to gain illegal work permits to start the pointing of the building. Work Permit data indicates that PW1 applications for renewed work have been filed repeatedly through 2011-2016, by Windermere Associates, Gluck, Aore Holdings, Moshe Azogui and Yan Ouaknine, were approved by Department of Buildings the next day.

20.     Current Owners, Gluck, Windermere, Aore, Azogui, Yan Ouaknine, Katz continued the work when they took ownership of the Subject Premises on November 18, 2010. The Defendants did directly attempt to illegally, physically force out the rent-stabilized tenants in order to convert those apartments into regular apartments.

21.     The City and its employees refused to stop the owners and issued full work permits violating the law. The Owners in the most unscrupulous manner did fully renovate the market rate apartments in the building. As they did this, they intentionally, and negligently, caused one hundred seventy-eight (178) rent stabilized units with

5

approximately 300 rent stabilized tenants to either be displaced, injured, poisoned; some of the tenants illnesses are so severe that they may be terminal. This includes the Plaintiff's current medical condition due to constant exposure from numerous toxins.

22. As already indicated, the City of New York, its divisions and employees, are complicit in the conspiracy. The City had the power to stop the illegal actions of the owners but refused. The City continued to issue work permits. It was responsible to know the conditions of the situation of these PW1 applications. Further evidence of the scheme comes in the form of other various documents, such as the PW3: Along with these documents, Moshe Azogui signed an Owner Certification Statement swearing that the job will be professionally certified and that he would ensure all construction to be done within the laws and regulations. This was a lie and simply did not occur.

23. Even further, renewed applications continued to be submitted by the Owners, or their agents, in 2015 and 2016: to wit: on November 10, 2015, agent for the owners, Kelley Peterson, submitted a PW1 application that contained false assertion that the Subject Premises contained no rent stabilized apartments. In early 2016, the owners again submitted false applications, which the city accepted without challenge, even though for years the tenants cried and pleaded for help from the City's agencies.

24. From November 2010, through April 2016, Owners, through their workers, destroyed various portions of the subject premises in 2 major ways; (1) the pointing of the outer walls of the building breaking through into Plaintiff's apartment 8B by the use of jackhammers which caused a different set of toxins and poisons to fill Plaintiff's apartment and lungs; and (2) internal damage within apartment 8B and the hallways surrounding it, and the lobby, caused a second set of multiple toxins and poisons to also fill the apartment and plaintiff's lungs; causing further damage to the heating, electricity, telephones, plumbing, hot water, and air ventilation.

25.    As a result, Plaintiff was forced to wear special breathing masks for poisons in an attempt to avoid breathing in the toxins and poisons in the building. By destroying the ventilation system in Plaintiff's bathroom and kitchen, this caused water damage which led to toxic mold build up in the bathtub and bathroom walls caused the bathroom ceiling and walls to collapse and exposed electrical wiring.    Management refused to make repairs and are incapable of fixing the permanent damage caused by this illegal gutting of the Subject Premises.

26.    Evidence of said toxins was substantiated by the Olmsted Environmental Health and Safety Inspection Survey conducted on three (3) separate dates, December 11, and 12, 2012, and January 24, 2013), finding the following toxins and serious health and safety issues: Airborne Dust, Lead, Asbestos, Crystalline Silica Dust, Mold, exposed electrical wiring.

27.    After the state civil case was reported in the newspapers, on February 19, 2015, the DEP sent inspectors to check on a recently vacated rent-stabilized apartment. They shut the apartment down as a hazmat site for asbestos. They tested only for asbestos to be present at the location, and that it was a threat to human safety.

**SPECIFIC ALLEGATIONS, INCLUDING BUT NOT LIMITED TO**:

28.    During various times from 2014-2016, the current Owners continued illegal construction and failed to fix the problems that they caused to Plaintiff's apartment. The City of New York completely failed to enforce compliance in what appears to be a case of corruption. Elevator issues continued throughout the years all the way up to the filing of this complaint in December 2016, without being corrected; this nearly caused Plaintiff's death as he was trapped in freefalling elevators several times. Plaintiff and others complained to 311 and the City of New York, but these complaints went unanswered.

29.     From 2014-2016, while the City accepted false documents, and refused to stop the illegal construction, the Owners continued illegal construction at Plaintiff's apartment and failed to fix all problems that they caused by destroying the air/ventilation system, the toilet system, the electricity; causing Plaintiff to be inuoondated with various toxins, such as silica, asbestos, mold, airborne dust, pesticides, bird droppings, and other various toxins.

30.     At times the City of New York issued directives to comply with correcting violations, but these directives were for show only, as they were never truly enforced. The Owners deliberately and willfully ignored New York City directives to comply and correct the aforementioned conditions; to wit: several NY City Environmental Control Board (EBC) violations went uncorrected from 2012-2016. They did this because they knew there would be no real repercussions.

31.     On February 23, 2014, Subject Premises was cited for three violations. On May 16, 2014, the ECB served the Owners with the following infractions: failure to maintain the building in code-compliant manner, failure to file a certificate of correction, and filing a certificate of correction or other related materials that contained false statements.

32.     Throughout the end of 2015 through 2016, the City continued to fail to enforce code compliance, failing to stop illegal work, continuing to issue illegal work permits based off of false information in the PW1 applications. Even though the DOB at that point in time realized that the PW1 applications were fraudulent it continued to issue illegal work permits.

33.     Even further, in January 2015, after Plaintiff filed a lawsuit in New York State Supreme Court, Civil Term, the current Owners, initiated a pattern of harassment against Plaintiff, by failing to fix the damage to Plaintiffs apartment mentioned above and filing false retaliatory housing court claims. Plaintiff, and counsel, complained to the City

8

numerous times and were met with little concern at first. It was not until the news media exposed these conditions after we filed a civil suit in New York State Supreme Court, Civil Term, did these agencies send agents to address these conditions.

34.      These conditions and actions by the current Owners continued throughout the current time period December 2016. For example, In March 2016, the HPD was notified of the destruction of the functional engineering in the ventilation system that removes the air, humidity and water.    Plaintiff's apartment contains exposed electrical wiring in the wall outlets and the ceiling in the bathroom; the walls are still falling down on all sides, filled with mold, faulty wiring conditions throughout the entire apartment, no smoke detectors, and no carbon monoxide detectors.    Even though Plaintiff did not have working smoke alarms he was the one who detected and called the FDNY to respond when the building caught fire.

## DEFENDANT'S PATTERN OF ILLEGAL ACTIONS

35.      That Defendant City of New York permitted the owners to file false PW1 applications, that their workers, DOB building inspectors, unlawfully cleared code violations, removed from the website the listing of such violations, that more than fifty (50) inspectors have already been arrested in the city for this type of behavior in other buildings.    All rent stabilized apartments and every elevator, washing machine, walls, floor, and ceilings were destroyed.    Tenant cries for help crashed the 311 system. The U.S. Post Office stopped delivering mail because it was too dangerous to enter the building.   This should have warned the City of New York and it investigative units. Whether this was done purposefully through the corruption of the city or benign neglect due to city employees accepting this through a "pay for play" agenda which is now being investigated by the Department of Justice and also the N.Y. County D.A.'s Office; or the result of criminal ineptitude or incompetence, it does not matter.    The only thing that

9

matters is that Plaintiff was exposed to all the above mentioned toxins that made him very sick and put his life in jeopardy. Had the city followed its own rules and laws, this would never have happened. The City of NY is as responsible for its actions as every citizen that resides in it. No one is above the law. Everyone is responsible to these laws.

36.     The City of New York knew, or should have known of all of these issues mentioned above, by virtue of numerous, and persistent, complaints made by the tenants, numerous tenant notices, and over 200 building code violations during the time period from 2010-2016 as per the New York City Department of Buildings (DOB), Environmental Control Board (ECB) violations data logs.

37.     That current owners have set a pattern of this type of behavior across New York City in the past few years, in numerous buildings, wherein the current Owners, and other John Doe Owners, and corporations, in any way possible attempt to drive out, or convert, the rent stabilized apartments into regular units in order to be able to obtain the highest rents possible, quenching their greedy needs.     These owners have illegally deregulated thousands of rent stabilized apartments across New York City.     The City of New York has consistently looked the other way and allowed the owners to commit crimes against rent stabilized tenants. The patterns continue to today and public workers for the City are still being investigated.

38.     Owners have resorted to retaliatory actions for the ongoing refusal of Plaintiff to vacate the premises so the Defendants could obtain more money for his apartment. Kevin Cullen and other attorneys for the owners have repeatedly told Plaintiff that since all landlord/owners are doing this across the city so too are they. This is the way business is done in New York City. HPD has also reiterated the exact same statement. In refusing to vacate the unlawful attempts to evict him, owners continue to file baseless actions in Housing Court against him to evict him. When defendants were informed by Counsel in

December 2014 that this complaint was going to be filed, Defendants re-filed a retaliatory eviction charge against Plaintiff in Housing Court Index # 64314-12. In six (6) years, Owners have refused to go to trial in Housing Court. Each time the Housing Court Judge has dismissed the case, except this last time when the case was forced to trial; the last such retaliatory case was dismissed by the Senior Supervising Judge, Judge Schneider in Housing Court in June 2016.

39. Accordingly, Mr. Hirsch was forced to endure years of suffering and pain and serious, possibly terminal medical condition from these toxins in his apartment; and caused him to be fearful to return home to his apartment which he has lived in for over 30 years.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## DEFENDANTS CITY OF NY, DOB, DOB INSPECTORS

-Corruption, Bribery, Official Misconduct-

40. Plaintiff incorporates by reference and re-alleges each and every allegation stated in Paragraphs 1 through 39.

41. The United States Constitution protects citizens from unlawful and illegal actions taken by corrupt government officials, and thereby allowing illegal action on the parts of landlord owners that destroy the homes of individuals. The City accepted false information on the PW1 work permit applications, and refused to stop the illegal work done by the owners, even though they knew fraud and perjury were being committed. It also precludes DOB Building Inspectors from removing violations of the building code that occurred at Plaintiff's home without there being proper rectification of the violation. Borough President Scott Stringer's office employees, and the NYPD and FDNY, indicated that there was nothing they could do because the City had issued work permits. Thereby, refusing to take lawful action.

11

42.    The actions of the Defendants violated Harold Hirsch's rights under Federal law.

43.    It is clear the Defendants lacked any good faith motivation or objectively reasonable basis to support any of these actions.

44.    Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Harold Hirsch.

45.    This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

46.    As a direct and proximate result of the unconscionable acts described above, Plaintiff Harold Hirsch has been substantially injured.

## AS AND FOR THE SECOND CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF
## AGAINST ALL DEFENDANTS

Violation of Constitutional Rights Under Color of State Law
-Falsifying Business Records,

47.    Plaintiff incorporates by reference and re-alleges each and every allegation stated in Paragraphs 1 through 46.

48.    Defendants permitted false applications for work permits to be validated and then granted full work permits which allowed owners to destroy and illegally de-regulate rent stabilized apartments.  The subject premises was fully occupied and contained 178 rent-stabilized apartments, but the owners falsely stated in these applications that the building was vacant and that there were no rent stabilized apartments.

49.    Owners committed various crimes and the City of New York was complicit in permitting the false applications to be used.  The city inspectors/officials then removed building code violations that had not actually been fixed.  The city of New York was responsible to ensure all information contained within all applications was truthful.  Thereby, the City of New York, caused damages to the Plaintiff's health in that he has

12

been suffering from various breathing issues, rashes, bleeding throat, and tumors throughout his body.

50.     Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Mr. Hirsch.

51.     These actions allowed the owners to violate the law and destroy the Plaintiff's apartment under the guise of legal construction work. This was false and fraudulently perpetrated on the Plaintiff by the owners with the necessary help of the employees of the City of New York; and thus the City is responsible as well.

52.     All Defendants are liable for said damage and injuries pursuant to the United States Constitution and 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

53.     As a direct and proximate result of the unconstitutional acts described above, Plaintiff Harold Hirsch was substantially injured.

## AS AND FOR THE THIRD CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS
## RACKETEERING

### Violation of 18 USC 1962

54.     Plaintiff incorporates by reference and re-alleges each and every allegation stated in Paragraphs 1 through 53. Specifically reiterating the Scheme to Defraud section which demonstrates the pattern of racketeering used by the Owners in real estate transactions related to rent-stabilized apartments and by the City of New York acting in complicity in the fraud. The Owners signed these false PW1 applications which contained warnings regarding criminal penalties for false statements.

55.     By reason of the foregoing, Defendants City of NY and DOB, deliberately permitted the owners to violate the law, violate building codes, file false paperwork with them and failed to report these actions to law enforcement or to take action for civil

13

remedies.   The owners by taking no safety precautions and by failing to file honest PW1 applications, obtained illegal work permits wherein they then intentionally  destroyed portions of the Subject Premises that were rent-stabilized, while properly renovating the non-rent stabilized apartments; by doing this they caused Plaintiff HAROLD HIRSCH, and many other tenants as well, to sustain serious exposure to the above mentioned pollutants, to suffer serious breathing and other health issues. The City of NY permitted this to happen and failed to stop the unlawful practice.   Plaintiff was exposed  to Asbestos, Lead, Mold, Silica, pesticides, bird droppings, and one hundred years of accumulated poisons from being one block away from the West Side Highway, various other forms of airborne dust, and other poisons; and was made sick, sore, lame and further disabled and did sustain severe and permanent physical, emotional, and personal injuries, that Plaintiff suffers from potentially cancer, mesothelioma, and other unknown injuries/illnesses related to the various toxins mentioned above, and Plaintiff necessarily incurred hospital, medical, and other expenses in various and diverse amounts, and future medical bills.

56.     In fact, the City of New York inspected the Subject Premises in February 2015, after the initial filing of the original complaint; due to the coverage by members of the press, such as the NY Post, the NY Daily News, the Real Deal, and the NY Times, which had a two (2) page story in their Sunday edition, brought on by Assembly woman Linda Rosenthal.  City inspectors entered the building, inspected for toxins, and found that illegal asbestos work was being performed by the defendants on the subject premises in an attempt to hide their illegal activities.  Finally, Inspectors ordered Defendants to stop the illegal work as a result, Plaintiff HAROLD HIRSCH was damaged in various and diverse amounts.

57.     I believe that there are no defenses to the aforesaid cause of action.

14

## AS AND FOR THE FOURTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

Violation of Constitutional Rights Under Color of State Law
-Denial of Civil Rights to Due to Fraudulent Pass Inspection Notices-

58.     Plaintiffs incorporate by reference and reallege each and every allegation stated in

Paragraphs 1 through 57.

59.     Defendants created false passing inspections statements at Plaintiff Harold

Hirsch's building and his apartment in particular.

60.     Defendants forwarded fraudulent pass notices to the DOB and false information

to other government officials of the City of New York.

61.     In creating false evidence against Plaintiff Harold Hirsch

62.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. §

1983, given that said actions were undertaken under color of state law.

63.     As a direct and proximate result of the unconstitutional acts described above,

Plaintiff Harold Hirsch has been substantially injured.

## AS AND FOR THE FIFTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

Violation of Constitutional Rights Under Color of State Law
-Conspiracy to Violate Plaintiffs' Civil Rights-

64.     Plaintiffs incorporate by reference and reallege each and every allegation stated in

Paragraphs 1 through 63.

65.     Defendant employees, acting under color of state law in both their individual

capacities and as agents for the City of New York, conspired together, reached a mutual

understanding, and acted in concert to undertake a course of conduct violative of

Plaintiff's civil rights by agreeing to intentionally and wrongfully falsifying business

records, or permitting false applications to be submitted to the DOB,  wrongfully passing

building inspections that should never have been passed, improperly allowing building construction that destroyed the Plaintiff's home, and then failing to protect the Plaintiff.

66. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

67. Defendants' actions were motivated by bad faith, malice, and/or willful indifference. In all PW1 applications it states that there are criminal liabilities for the entry of false information in the PW1 application and the City of New York refused to hold owners responsible for the false documents.

68. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Harold Hirsch has been substantially injured.

69. The acts of Defendants, as described, were motivated by an evil motive and intent, and involved a reckless and callous indifference to the federally protected rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

70. If Plaintiff prevails, he is entitled to an award of attorney's fees, pursuant to 42 U.S.C.A. § 1988.

## AS AND FOR THE SIXTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF
## AGAINST CITY OF NY, DOB, JD INSPECTORS

### Violation of Constitutional Rights Under Color of State Law
### -Failure to Intercede-

71. Plaintiff incorporates by reference and re-alleges each and every allegation stated in Paragraphs 1 through 70.

72. The actions of Defendant officials detailed above violated the Plaintiff's rights under the United States Constitution. It is widely recognized that all law enforcement/government officials have an affirmative duty to intervene to protect the

16

constitutional rights of citizens from infringement by other law enforcement/government officials in their presence.

73.     Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of the Plaintiff.

74.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

75.     As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST THE DEFENDANT CITY OF NY

- Implementation of Municipal Policies, Practices, and Customs that Directly
Violate Constitutional Rights, Failure to Implement Municipal Policies to
Avoid Constitutional Deprivations and Failure to Train and Supervise
Employees Under Color of State Law-

76.     Plaintiff incorporates by reference and re-alleges each and every allegation stated in Paragraphs 1 through 75.

77.     Upon information and belief, Defendant Supervisor inspectors for both DOB and DEP were directly responsible for supervising the other Defendant officials/inspectors.

78.     Upon information and belief, Defendant City of New York and Supervisors, unknown, were supervisors and final decision makers, and as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiffs' constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct DOB and DEP Building Inspectors concerning the rights of citizens, including proper building code enforcement, the proper handling of applications for work permits, and the proper inspection procedures and pass/fail standards.

79.     In the alternative, and upon information and belief, Defendants instituted policies addressing the topics listed above, but through deliberate indifference to the same culture of gross negligence, carelessness, and malice, and/or improperly pressuring inspectors to falsely pass inspections, demonstrated a willful indifference to the constitutional rights of the Plaintiff.  The policies, procedures, customs and practices of the Defendants violated the Constitutional rights of the Plaintiff under the United States Constitution.

80.     This conduct on the part of Defendants City of New York and all of its various employees involved, also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

81.     As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

## DOCTRINES ASSERTED BY PLAINTIFF

82.     That Plaintiff asserts the doctrine of equitable estoppel against Defendants for their fraud in this case.  Plaintiff asserts estoppel to prevent injustice due to inconsistency, fraud and perjury perpetrated by these defendants against Plaintiff.

## CONCLUSION

83.     The owner's actions caused the Subject Premises to become uninhabitable; caused the dangerous conditions to life, health, and safety; made the premises unusable, and continuously interrupted basic services, for which the tenants had a reasonable expectation to use, exposing Plaintiff to tortuous conditions including percussion impacts of heavy construction equipment and dangerous sound levels.  This was done on daily basis consistently for many years.

84.     The City of New York, through its employees, protected the owners and allowed falsified business records to be accepted, knowingly filed their own false records to

comply with city directives, and falsely cleared building code violations without having the problems actually corrected.

## DEMAND FOR PUNITIVE DAMAGES

85.     The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person.   Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct, their knowing and deliberate inaction to protect the Plaintiff and other citizens of New York City, their willful indifference to accepting false information and permitting illegal work permits to be issued.

## DEMAND FOR TRIAL BY JURY

86.     The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Harold Hirsch requests that this Honorable Court grant him the following relief:

A.      A judgment in favor of the Plaintiff against City of New York, DOB, Defendant Inspectors/officers for compensatory and punitive damages in an amount to be determined by a properly charged jury;

B.      A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

C.      Any other relief this Court finds to be just, proper, and equitable.

D.      Court referral of the case to Federal law enforcement agencies for criminal prosecution of the Defendants and the owners who were involved in the fraud.

19

WHEREFORE, deponent respectfully requests that the Court allow Plaintiff to specifically reserve the right to amend this complaint or to bring other defendants before this Court as this investigation continues to unfold and reveal newly discovered evidence potentially linking other entities in the conspiracy and scheme to defraud.

Dated: New York, New York
February 3, 2017

Respectfully Submitted By,

Lawrence J. Fredella, Esq. (LF2543)
30 Wall Street, 8th Floor
New York, NY 10005
C: (917) 821-9779
P: (212) 709-8398
F: (212) 943-2300
E: lawrencefredella@gmail.com

Verification:
STATE OF NEW YORK
COUNTY OF NEW YORK

Harold Hirsch, being duly sworn, states that he is the Plaintiff in this action and that the foregoing Complaint is true to his own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters he believes same to be true.

Harold Hirsch

Sworn to before me this 3rd
Day of February, 2017

NOTARY PUBLIC

Lawrence J. Fredella
Notary Public, State of New York
N0. 02FR6256775
Qualified in New York County
Commission Expires September 6, 2020