UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAROLD HIRSCH,

                    Plaintiff,

        - against -

THE CITY OF NEW YORK, CITY OF NEW YORK
DEPARTMENT OF BUILDINGS, DEPARTMENT
OF ENVIRONMENTAL PROTECTION, JOHN DOE
DOB AND DEP OFFICIALS/INSPECTORS (the name
John Doe being fictitious, as the true names are
presently unknown),

                    Defendants.

**OPINION AND ORDER**

17 Civ. 965 (ER)

Ramos, D.J.:

        Plaintiff Harold Hirsch brings this action against the City of New York, the City of New

York Department of Buildings (the "DOB"), and the New York City Department of

Environmental Protection (the "DEP"), (collectively, the "City" or "Defendants"), pursuant to 42

U.S.C. § 1983, 18 U.S.C. § 241, and the Racketeer Influenced and Corrupt Organizations Act, 18

U.S.C. § 1962 ("RICO").  Plaintiff alleges violations of his federal constitutional rights under

Section 1983 as a result of the City's alleged failure to follow regulations that protect citizens

from having their rent-stabilized apartments destroyed and their failure to intervene to prevent

private citizens from so harming Plaintiff.  Plaintiff further alleges a conspiracy to violate his

constitutional rights pursuant to 18 U.S.C. § 241, and violations of RICO because the municipal

employees allegedly acted in their official capacity when engaging in a scheme to defraud

citizens.  Doc. 1 at 1, Doc. 18.  Pending before the Court is Defendants' motion to dismiss.

Docs. 14.  For the reasons set forth herein, Defendants' motion is GRANTED.

## I.  Factual Background[1]

Plaintiff, Harold Hirsch, a disabled man, is a tenant of 666 West End Avenue, New York, New York (the "Subject Premises").  Doc. 1 ¶¶ 5, 17.  Plaintiff has lived in a rent-stabilized apartment in the Subject Premises since 1983.  *Id.* ¶ 16.  Plaintiff alleges that from 2010 to 2016 the City was complicit in a scheme of the building's owners to conduct widespread construction on the Subject Premises in order to force out rent-stabilized tenants, create market-rate apartments in their place, and generate increased profits for the owner and the City alike.  *Id.* at ¶¶ 15, 19–21.  Plaintiff alleges that the City was complicit because it improperly approved and renewed applications for work permits for the Subject Premises that falsely represented that the building was vacant and contained no rent-stabilized apartments.  *Id.* ¶¶ 18, 23.  According to Plaintiff, the City's issuance of full work permits and failure to confirm whether the representations contained in them were true constitutes a violation of law.  Moreover, Plaintiff asserts that, while the owners only renovated the market-rate apartments in the building, the owners intentionally and negligently caused 300 rent-stabilized tenants in 178 units to be displaced, injured, or poisoned, and attempted to physically force out rent-stabilized tenants in order to convert those apartments to market-rate ones.[2]  *Id.* ¶¶ 20–21.

As a result of the building construction, which included the use of jackhammers to point the building's outer walls, "the outer walls of the [Subject Premises] br[oke] through into Plaintiff's apartment."  *Id.* ¶ 24.  This resulted in internal damage of Plaintiff's apartment, the

---

[1] In ruling on a motion to dismiss pursuant to Rule 12(b)(6) a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  The following facts are therefore based on allegations in Plaintiff's Complaint, Doc. 1.

[2] The Court agrees with Defendants that the Complaint's reference to "Defendants" at ¶¶ 18, 20, 38, seems "clearly to point to the owners, not the City defendants," Doc. 15 at 3 n. 2, a point which Plaintiff does not contest.

surrounding hallways, and the lobby area. *Id.* The construction also damaged the heating, electricity, telephones, plumbing, and air ventilation systems of the Subject Premises. *Id.* Additionally, because the ventilation and water systems were allegedly compromised by "toxins and poisons" resulting from the construction, Plaintiff's kitchen and bathroom suffered water damage, toxic mold build-up, collapsed ceilings, and exposed electrical wiring. *Id.* ¶ 25. Plaintiff claims that from November 2010 to April 2016, highly deadly toxins, poisons, and powdered cement were released into the air in Plaintiff's apartment, making it difficult for Plaintiff to see or breathe in his apartment unit. *Id.* ¶ 24. Though Plaintiff does not specify his precise medical condition, he alleges that he had to wear masks and was ultimately forced to begin medical treatment because of his exposure to the toxins in his apartment and the common areas of the Subject Premises. *Id.* ¶¶ 21, 39 (alleging that "Mr. Hirsch was forced to endure years of suffering and pain and serious, possibly terminal medical condition from these toxins in his apartment; and caused him to be fearful to return home to his apartment which he has lived in for over 30 years."), 55. Although Plaintiff does not specify precisely over what duration, he alleges that residents of the Subject Premises issued "daily complaints" related to these conditions, resulting in the collapse and redesign of New York City's non-emergency information hotline, known as NYC311. *Id.* ¶ 13. Plaintiff further asserts that the U.S. Post Office discontinued delivery to the Subject Premises as a result of the ongoing construction. *Id.* ¶ 35. On the basis of these facts, Plaintiff alleges that Defendants should have known of the conditions at the Subject Premises, but failed to prevent further harm to Plaintiff. *Id.* ¶¶ 13, 35 (alleging that these facts "should have warned the City of New York and it[s] investigative units" about the conditions at the Subject Premises).

On December 11 and 12, 2012, and January 24, 2013, Olmsted Environmental Services, Inc. conducted a health and safety inspection survey of the Subject Premises and found toxins and health and safety issues such as lead, asbestos, crystalline silica dust, mold, and exposed electrical wiring. *Id.* ¶ 26. Plaintiff does not allege that the City conducted this study or was ever made aware of its results. On January 27, 2015, Plaintiff filed suit in New York state court against the private owners, operators, and contractors involved in construction at the Subject Premises, alleging various violations of state and federal law and seeking damages, costs, and attorney's fees. Doc. 17, Attach. 2, at 1, 22–23. Shortly thereafter, on February 19, 2015, the DEP sent inspectors to review a vacated rent-stabilized apartment at the Subject Premises. As a result, the Subject Premises was shut down as a hazmat site for asbestos and construction at the site was discontinued. *Id.* ¶ 27. Plaintiff, however, conclusorily alleges that the DEP only acted "in an attempt to hide their illegal activities." *Id.* ¶ 56.

In furtherance of his conspiracy claim, Plaintiff alleges that DOB building inspectors unlawfully cleared code violations and removed such violations from DOB's website. *Id.* ¶ 35. Plaintiff also conclusorily suggests that the City may be engaged in "corruption" or that its employees may be engaged in a "pay for play" agenda. *Id.* ("Whether this was done purposefully through the corruption of the city or benign neglect due to city employees accepting this through a 'pay for play' agenda which is now being investigated by the Department of Justice and also the N.Y. County D.A.'s Office; or the result of criminal ineptitude or incompetence, it does not matter.").

## II. Procedural History

Plaintiff filed a complaint on February 9, 2017, bringing seven causes of action under 42 U.S.C. § 1983, 18 U.S.C. § 241, and 18 U.S.C. § 1962, and seeking compensatory and punitive

damages. Doc. 1 ¶¶ 2, A–B. In addition to the City of New York, Plaintiff named as Defendants the DOB and DEP, as well as its officials and inspectors (the "Doe Defendants") in their official and individual capacities. Doc. 1 ¶¶ 6–11.

Defendants submitted an order for an extension of time to answer the complaint on February 27, 2017, stating that they needed additional time to investigate the allegations in the complaint. Doc. 8. On April 14, 2017, Defendants requested a pre-motion conference to seek permission to dismiss the complaint. Doc 11. The Court granted Defendants' request, and a pre-motion conference was held on May 2, 2017. On May 4, 2017, Defendants filed a motion to dismiss the complaint. Doc. 14.

## III. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all of the factual allegations from the complaint, and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must adhere to Rule 8(a), which has been interpreted to require that the complaint contain enough factual matter for the claim to be plausible on its face. *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] Complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## A. Liability Under § 1983

Section 1983 grants a right of action to any "citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges, or immunities secured by the Constitution" or federal law by a person acting under color of state law.  42 U.S.C. § 1983.  Thus, in order to state a claim under Section 1983, a plaintiff must allege that: (1) defendants were state actors[3] or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  Section 1983 therefore "excludes from its reach merely private conduct, no matter how discriminatory or wrongful" that conduct may be.  *Id.* at 50.  Likewise, "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  Thus, a civil rights action brought under Section 1983 will stand only insofar as a plaintiff can prove an actual violation of his rights under the Constitution or federal law.  *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

## B. RICO Claims

"RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of § 1962 of this chapter.'"  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)).  To succeed on a Section 1962 claim, a plaintiff must "independently allege both an enterprise—a group of persons in an ongoing association—and a pattern of racketeering activity—a series of allegedly criminal acts."

---

[3] The term "state actor" includes both local and state level officials and entities.  *See generally Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

*DeFalco v. Dirie*, 923 F. Supp. 473, 476 (S.D.N.Y. 1996) (quoting *Procter & Gamble v. Big Apple Industrial Buildings, Inc.*, 879 F.2d 10, 15 (2d Cir. 1989)).  A plaintiff seeking to demonstrate a pattern of racketeering activity under § 1962 must allege (1) at least two predicate acts of racketeering occurring within a ten-year period; (2) that the predicate acts are related to each other; and (3) that the predicate acts amount to or pose a threat of continued criminal activity.  *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2nd Cir. 1999) (citing *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229, 239 (1989)).

## IV.  Discussion

### A.  Liability Under § 1983[4]

The City concedes that Defendants "are state actors who act under color of state law," *see* Doc. 15 at 6, therefore satisfying the first prong of a Section 1983 claim, *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. at 49-50.  Nonetheless, Plaintiff's claims must be dismissed because he fails to allege that those state actors violated a constitutionally or federally protected right.  Six of Plaintiff's seven causes of action are allegedly predicated on violations of his constitutional rights.  *See* Doc. 1 at 11, 12, 15, 16, 17.  Plaintiff claims that Defendants:  "accepted false information on the . . . work permit applications" and failed to "stop the illegal [construction] work" (Count 1); "permitted false applications for work permits to be validated and then granted full work permits," which allowed for the destruction of the apartments in the Subject Premises (Count 2); violated his civil rights by unlawfully clearing building code violations and passing

---

[4] As an initial matter, the Court notes that "agencies of New York City are not suable entities in § 1983 actions." *Nnebe v. Daus*, 644 F.3d 147, 158 n.6 (2d Cir. 2011) (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007)); *see* N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").  Accordingly, the DOB and DEP must be dismissed from this action on this basis alone.

inspection statements (Count 4); acting in their official and individual capacities, engaged in a "conspiracy" to violate Plaintiff's civil rights by conspiring to "intentionally and wrongfully falsify[] business records" (Count 5)[5]; failed to intercede to prevent government employees from violating Plaintiff's constitutional rights (Count 6); and failed to supervise or train its employees with respect to proper building code enforcement and inspection and handling of applications and inspection reviews (Count 7). *Id.* ¶¶ 41, 48–49, 58–63, 59–60, 65, 72, 78. According to Plaintiff, these failures amount to violations of rights protected by the Fourth, Fifth, and Fourteenth Amendments. Doc. 1 at 1; Doc. 18 at 4. In substance, however, these causes of action amount to nothing more than a claim that the City's approval of building applications containing false information constitutes an abdication of the City's duty to enforce its rules and regulations, train its employees to follow the same, and intercede to protect Plaintiff from construction undertaken by private citizens at the Subject Premises.[6] The Fourth, Fifth, and Fourteenth Amendments do not protect Plaintiff from the conduct alleged here.

### 1. Fourth Amendment Claims

The Fourth Amendment protects individuals in their homes "against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he Fourth Amendment does not apply to a

---

[5] Although Plaintiff's fifth cause of action fails to specify the principle statutory violation being alleged, presumably he advances this claim under 18 U.S.C. § 241 and Section 1983. *See* Doc. 1 ¶¶ 2, 64–70. Section 241 is a *criminal* statute for which "there is no private right of action." *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)). The Court therefore analyzes this claim under Section 1983 only.

[6] Plaintiff's brief is no more illuminating on the constitutional violations at issue here than his complaint. Although Plaintiff frames his argument in several ways, each argument is a reprise of his central claim that the City failed to confirm the accuracy of the statements contained in the work applications, and that such inaction amounts to a failure to enforce the City's own rules and regulations. *See* Doc. 18, Point I.A. at 9 (arguing that Defendants "Failed to Follow their own Rules and Laws"), Point I.B. at 10 (arguing that Defendants failed to "Verify the contents of . . . Applications containing blatant false information"); Point I.C. at 14 (arguing that Defendants failed to "enforce their own law and simply verif[ied] the Contents of the Construction Applications Filed by Owners").

search or seizure, even an arbitrary one, effected by a private party on his own initiative," but it does "protect[] against such intrusions if the private party acted as an instrument or agent of the Government." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989).

Here, the Court finds that Plaintiff's claim of a Fourth Amendment violation is conclusory and wholly unsupported by allegations contained in the complaint. Outside of a heading in his briefs asserting that the "complaint alleges . . . violation[s] of the Fourth . . . Amendment[]," neither Plaintiff's Complaint nor his briefs mention the Fourth Amendment. *See* Doc. 18 at 7; Doc 25 at 3. More fundamentally, Plaintiff's Complaint fails to set forth allegations plausibly supporting a Fourth Amendment claim. Indeed, Plaintiff's complaint does not allege that Plaintiff or his property was in any way subjected to a search or seizure—unlawful or otherwise—by the City or a private citizen. Accordingly, Plaintiff has not sufficiently pleaded a cognizable Fourth Amendment violation. *See Lautman v. Vill. of Saugerties, N.Y.*, No. 1:13-CV-00264 (MAD), 2014 WL 1653189, at *6 (N.D.N.Y. Apr. 23, 2014) (dismissing case where "allegations regarding illegal search [were] entirely conclusory and insufficient to plead a plausible cause of action" premised on a Fourth Amendment violation); *Cannon v. Wood*, No. 9:10–cv–1332, 2011 WL 7071100, *7 (N.D.N.Y. Aug. 12, 2011) (dismissing plaintiff's illegal search claim where the plaintiff stated "in a conclusory fashion that he was subjected to an illegal search" and the complaint was "devoid of any factual allegations to support this claim"); *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) ("Under Rule 12(b)(6), the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted.") (internal quotation marks omitted).

## 2.    Fifth and Fourteenth Amendment Due Process Claims

Plaintiff summarily asserts violations of the due process clause of the Fifth and Fourteenth Amendments. *See* Doc. 18 at 7 (stating in heading that "complaint alleges violations of the . . . Fifth Amendment[]"); Doc 25 at 3 (same); Doc 18 at 13 (asserting "substantive due process" claims), 22 (asserting "due process violations under the Fourteenth Amendment"). Plaintiff appears to advance two bases for these constitutional claims. First, Plaintiff asserts a deprivation of liberty on the basis of state intrusion into his residence. Doc. 18 at 22 ("Liberty interests are implicated whenever the state intrudes upon the most essential and basic aspect of familial privacy, this would include a disabled person in his home, his residence."). Second, he asserts a due process violation premised on the action and inaction of state actors. In this connection, Plaintiff contends that Defendants are liable for both their approval of building applications and their failure to prevent private actors from engaging in construction on the Subject Premises that resulted in "toxic environmental conditions" there. *Id.* at 13; *see* Doc. 1 ¶¶ 12 ("The City failed numerous times to stop the owners from filing false documents, or documents containing false information."), 28 ("The City of New York completely failed to enforce compliance" with its rules and regulations), 32 ("the City continued to fail to enforce code compliance"), 72 (Count 6, asserting Defendants had an "affirmative duty to intervene"). With respect to Plaintiff's failure to intervene and failure to enforce claims, he seeks to hold Defendants liable on a theory of state-created danger. The Court rejects each of these arguments.

### a.    *Plaintiff Alleges No Deprivation of Property or Intrusion*

As an initial matter, Plaintiff does not assert a procedural or substantive due process violation on the basis that he has been deprived of his property without due process of law or that his liberty has been constrained by private or state intrusion. *Cf. Mathews v. Eldridge*, 424 U.S.

319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). As Defendants note, Plaintiff has not been deprived of his property and apparently continues to reside in his apartment at the Subject Premises to this very day. Doc. 22 at 3–4; Doc. 1 ¶¶ 5, 16–17, 39. Likewise, despite Plaintiff's vague reference to state intrusion in his residence, Doc. 18 at 22, he has not pleaded allegations sufficient for the "Court to draw the reasonable inference that [Defendants] [are] liable" for intrusion into his residence. *Iqbal*, 556 U.S. at 678. Again, Plaintiff fails to point the Court to any such allegations in the Complaint. Nor has the Court in its review identified any allegations tending to suggest that state or private actors intruded on Plaintiff's residence.[7]

### b. Plaintiff's Failure to Intervene and Failure to Enforce Claims Do Not State a Cognizable Due Process Violation

The Court also rejects Plaintiff's contention that he has alleged a cognizable substantive due process violation by reason of Defendants "failure to prevent the owners and operators from allegedly creating toxic environmental conditions." Doc. 18 at 13. This is because "the Due Process Clause 'is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.'" *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 194–96 (1989)). As such, "[o]nly an affirmative act can amount to a violation of substantive due process." *Id.*; *see also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767 n.13 (2005) ("a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another"). It is

---

[7] The Court separately notes that Plaintiff's reliance on case law addressing the legality of the detention of mothers and the seizure of their newborn children in the context of a child abuse investigation is entirely misplaced. *See* Doc 18 at 22 (citing *Kia P. v. McIntyre*, 2 F. Supp. 2d 281, 286 (E.D.N.Y. 1998), *aff'd*, 235 F.3d 749 (2d Cir. 2000)).

therefore "not enough to allege that a government actor failed to protect an individual from [environmental or airborne contaminants] or failed to warn the individual of that danger." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007).

Similarly, the Court concludes that Plaintiff has not plausibly alleged constitutional violations based on the allegation that the City abdicated its duty to enforce its rules and regulations and train its employees to follow those rules. By definition, Defendants' alleged "*failure* to enforce" the City's rules regarding false statements in official documents, *see* Doc. 18 at 8 (emphasis added), does not amount to an affirmative act. *See Town of Castle Rock, Colo*, 545 U.S. at 767 n.13; *see also Carter v. City of New York*, No. 13-CV-1839 (RA), 2014 WL 4953641, at *3 (S.D.N.Y. Sept. 30, 2014) ("As other district court's in this circuit have held[:] 'A local agency's failure to remedy potentially hazardous living conditions does not amount to a substantive due process violation.'") (quoting *Allen v. N.Y.C. Hous. Auth.*, 10 Civ. 168 (CM) (DF), 2012 WL 4794590, at *7 (S.D.N.Y. Sept. 11, 2012) (citing cases in which district courts have rejected Fourteenth Amendment claims against "state actors . . . accused of failing to remedy mold conditions in public housing and . . . a public school" by distinguishing between "inaction" by the agency and the "actual creation of harm"). Likewise, the City's alleged "fail[ure] to implement policies" and train employees so as to "to avoid constitutional deprivations," *see* Doc. 1 ¶¶ 76–81 (Count 7), is not an affirmative act giving rise to a substantive due process claim. *See Lombardi*, 485 F.3d at 79.

### i.  *State Created Danger*

Plaintiff argues that his failure to intervene and failure to enforce claims are saved by the doctrine of "state-created danger," an exception to the general rule prohibiting substantive due process claims predicated on the state's failure to protect. *See* Doc. 18 at 13 (citing *Okin v. Vill.*

*of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 419 (2d Cir. 2009) and *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993)).  This doctrine subjects state actors to liability under Section 1983 "if they affirmatively created or enhanced the danger of private violence."  *Okin*, 577 F.3d at 428 (citing *Dwares*, 985 F.2d 94 at 99).  "Mindful of the Supreme Court's admonition not to permit the Due Process Clause to 'transform every tort committed by a state actor into a constitutional violation,'" the Second Circuit has imposed state-created danger liability "with considerable stringency."  *Benzman v. Whitman*, 523 F.3d 119, 127 (2d Cir. 2008) (quoting *DeShaney*, 489 U.S. at 202).

Accordingly, even where government action results in bodily harm, there "is no[] . . . substantive due process violation unless 'the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (quoting *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir.2005)).  "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity."  *Id.* at 81 (internal quotation marks and citations omitted).  This is a high bar that has generally been cleared only where the state affirmatively creates danger that results in or increases the likelihood of physical harm or death.  *See Okin*, 577 F.3d 415 (concluding there was a genuine dispute of material fact as to whether state-created danger liability attached to police officers implicit countenance of domestic violence abuse); *Pena v. DePrisco*, 432 F.3d 98, 114 (2d Cir. 2005) (concluding state-created danger existed where officers implicitly condoned and encouraged intoxicated officer's misconduct resulting in death of pedestrians); *Dwares*, 985 F.2d at 96 (concluding state-created danger liability existed where police actively incited private violence by skinheads on "individuals engaged in lawfully protected First Amendment

13

Activity"); *see Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998) (concluding question of fact as to whether state-created danger liability existed where police gave back a robbery victim's gun, took victim along on a chase after the robber, and victim ultimately shot the robber).

In determining whether state conduct shocks the conscience, "'negligently inflicted harm is categorically beneath the threshold of constitutional due process,'" whereas "intentionally inflicted injuries are the 'most likely to rise to the conscience-shocking level.'" *Okin*, 577 F.3d at 431 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). "In between, the Supreme Court has recognized that conduct exhibiting 'deliberate indifference' to harm can support a substantive due process claim." *Lombardi*, 485 F.3d at 82.

Here, the Court concludes that Plaintiff has failed to plausibly allege a state-created danger. As explained by Defendants, *see* Doc. 22 at 6, nearly all of the approved construction applications filed with the DOB regarding the Subject Premises were professionally certified by licensed construction professionals who attested to the "truth and accuracy" of the applications. Doc. 21, Exs. G (showing 24 of 26 approved applications were professionally certified) & H. As a result, those applications were not submitted for review by a DOB plan examiner.[8] *Id.* The Court agrees with Defendants that the DOB's approval of certified applications, which the DOB is authorized to do under the Rules of the City of New York, *see* New York City, N.Y., Rules, Tit. 1, § 21-01, New York City, N.Y., Rules, Tit. 1, § 21-01, is not "so egregious[] or outrageous[] that it may fairly be said to shock the contemporary conscience." *Lombardi*, 485

---

[8] The Court separately notes that even in the two instances in which the City approved building permits by "Plan Examination," Doc. 21, Ex. G, there is no indication that the City would have undertaken a site visit or done anything more than "review the construction documents [provided to them] for compliance with applicable code and zoning requirements." NYC Department of Buildings, Plan Examination Guidelines, available at https://www1.nyc.gov/site/buildings/business/plan-examination.page; *see also Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Courts routinely take judicial notice of" documents "retrieved from government websites.").

F.3d at 79 (internal quotation marks omitted); *see also Velez v. Levy*, 401 F.3d 75, 93–94 (2d Cir.

2005) ("The measure of what is conscience-shocking is no calibrated yard stick. Nevertheless,

malicious and sadistic abuses of power by government officials, intended to oppress or to cause

injury and designed for no legitimate government purpose, unquestionably shock the

conscience.") (citations and internal quotation marks omitted).

Furthermore, although state of mind may be alleged in general terms, *Iqbal*, 556 at 686,

Plaintiff's allegation that Defendants acted with bad faith, malicious intent, or deliberate

indifference is entirely conclusory, *see* Doc. 1 ¶¶ 44, 50, 67, 69, 73, 78, 79 (alleging

"Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the

rights of Harold Hirsch."); *see also* Doc. 1 ¶ 41 (conclusorily asserting the "City . . . knew fraud

and perjury were being committed"), and is not supported by factual allegations sufficient to

plausibly suggest that Defendants acted with the requisite state of mind. *See Iqbal*, 556 at 678,

683. Although Plaintiff alleges that he and residents of the Subject Premises made regular calls

to NYC311, New York City's non-emergency information hotline, Doc. 1 ¶ 13 (alleging only

vaguely that "tenants continuously cried for help"), the Complaint does not state what the

substance of these complaints was or allege that DOB and DEP officials were in fact ever made

aware of these complaints. Rather, Plaintiff assumes that because the NYC311 system "crashed"

and that the U.S. Post Office discontinued delivery to the Subject Premises, DOB and DEP

officials should have known of the conditions at the Subject Premises. *See* Doc 1. ¶ 35 (alleging

that these facts "should have warned the City of New York and it[s] investigative units" about

Plaintiff's exposure to toxins and health concerns at the Subject Premises). Indeed, as

Defendants correctly note, and Plaintiff does not contest, Doc. 15 at 8, the appropriate forum to

challenge administrative decisions of the City of New York is through an Article 78 proceeding.

*See Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 605 (S.D.N.Y. 2005).[9]  Plaintiff does

not allege that he instituted such proceedings here.

Likewise, Plaintiff asserts that a health and safety inspection survey conducted by

Olmsted Environmental Services, Inc. concluded that toxins such as asbestos and crystalline

silica dust were present at the Subject Premises, but never alleges that Defendants were made

aware of this.  *Id.* ¶ 26.  Plaintiff advances only one allegation tending to support Defendants

awareness of the conditions at the Subject Premises.  Namely, that on February 19, 2015,

following news reports of Plaintiff's state action against the owners, operators, and contractors

involved in construction at the Subject Premises, DEP inspectors tested a recently vacated rent-

stabilized apartment and found that asbestos was present there.  *Id.* ¶ 27.  But even then, Plaintiff

acknowledges that the DEP responded to this finding by labeling the apartment a "hazmat site

for asbestos" and shutting down construction at the Subject Premises.  *Id.* ¶¶ 27, 56 (alleging that

following the DEP's detection of asbestos, "Inspectors ordered [d]efendants to stop the illegal

work as a result").  On the facts alleged here, the Court finds that Plaintiff does not sufficiently

allege bad faith, malicious intent, or knowledge sufficient to support a deliberate indifference

---

[9] Article 78 of the New York Civil Practice Law and Rules provides, in relevant part, that:

> The only questions that may be raised in a proceeding under this article are:
>
> 1.  whether the body or officer failed to perform a duty enjoined upon it by law; or
> 2.  whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
> 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
> 4.  whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.

N.Y. Civ. Prac. L. & R. § 7803 (McKinney 1994).

claim. *Cf. Pena v. DePrisco*, 432 F.3d 98, 114 (2d Cir. 2005) (noting that deliberate indifference "requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk") (internal quotation marks omitted).

The Court in no way condones the allegedly false representations made by private actors or the alleged acts undertaken by private actors following Defendants' approval of construction applications containing those misrepresentations. But those parties are not before the Court, and the due process clause is not the appropriate avenue to seek redress of injuries inflicted by private parties. In any event, Plaintiff fails to plausibly allege that the state acted egregiously or outrageously in creating the harm alleged here. Accordingly, Counts 1, 2, 4, 5, 6, and 7, which are premised on alleged constitutional violations of Plaintiff's due process rights under the Fifth and Fourteenth Amendments, are hereby dismissed.[10]

### B. RICO Claims

Plaintiff alleges that "the City and the owners of the [Subject Premises] were engaged in a pattern of racketeering in violation of 18 U.S.C. § 1962, and that the City was complicit in failing to stop the owners from their fraudulent acts." Doc. 18 at 17–18; Doc. 25 at 8. Plaintiff seeks to hold individual Defendants liable in their official and individual capacities. Doc. 1 ¶ 11. Defendants principally contend that Plaintiff's RICO claim fails because neither a municipality nor its employees acting in their official capacity can be liable under RICO. They further assert that Plaintiff fails to plausibly allege that officials acted independently of their office, such that

---

[10] Count 4 and 5 allege "denial of civil rights" and "conspiracy to violate Plaintiff's civil rights," Doc. 1 ¶¶ 58–70, respectively. Given Plaintiff's complaint and briefing, the Court construes these Counts as due process claims. *See* Doc. 1 at 1 ("asserting Fifth and Fourteenth Amendment violations). To the extent the alleged constitutional violations are premised on violations of the Fourth Amendment, for the reasons stated *supra* at 8–9, Plaintiff has failed to allege a cognizable Fourth Amendment claim. *See* Doc. 18 at 4, 22 (asserting "Fourth and Fifth Amendment" and "due process" violations).

they may be held liable in their individual capacity. Doc. 15 at 10. Having reviewed the Complaint, the Court finds that Plaintiff has not set forth facts sufficient to plead a RICO claim.

As an initial matter, a municipality "cannot be held liable in a civil RICO case as a matter of law, [and] neither may its employees be responsible in their official capacities." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998) *aff'd*, 182 F.3d 899 (2d Cir. 1999); *see also Rogers v. City of New York*, 359 F. App'x 201, 204 (2d Cir. 2009) ("there is no municipal liability under RICO"). Plaintiff's RICO claim against the City and Doe Defendants sued in their official capacities must therefore be dismissed.

Likewise, as Defendants contend, Doc. 15 at 10–11, Plaintiff has failed to sufficiently demonstrate that the City employees were acting in their individual capacity when engaging in a RICO predicate act. To assert a claim against a state actor in their "individual capacity a plaintiff must assert 'that the defendant did something . . . that is tortious independent of the office that the defendant holds.'" *Brewer v. Vill. of Old Field*, 311 F. Supp. 2d 390, 399 (E.D.N.Y. 2004) (quoting *Lathrop v. Juneau & Associates, Inc.*, P.C., 220 F.R.D. 330, 335 (S.D. Ill. 2004) (citing *Walker, et al. v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986) (J. Easterbrook)). Here, Plaintiff in no way plausibly alleges that individual Defendants engaged in tortious conduct independent of the office they hold. Rather, he asserts the individual Defendants failed to properly carry out their official duties by confirming the accuracy of construction applications and enforcing the City's rules and regulations. *See* Doc. 18 at 8. More specifically, in outlining his RICO Count, Plaintiff asserts that the City "deliberately permitted the owners to violate the law, violate building codes, file false paperwork with them, and failed to report these actions to law enforcement or take action for civil remedies." Doc. 1 ¶ 55. But where a plaintiff alleges that defendants "had a duty" that "attach[es] to any occupant of th[at] office," they bring claims against an individual in

their official capacity, not in their individual one. *Walker, et al.*, 791 F.2d at 508. Accordingly, Plaintiff has failed to state a RICO claim against officials in their individual capacities.

The Court also agrees with Defendants that Plaintiff's claims must fail because he does not plausibly allege a violation of a RICO predicate act. Doc. 22 at 8. "'Racketeering activity' is defined as 'any act . . . indictable under' specified criminal statutes. The criminal statutes specified are colloquially referred to as RICO 'predicates.'" *European Cmty. v. RJR Nabisco, Inc.*, 783 F.3d 123, 124 (2d Cir. 2015) (citing 18 U.S.C. § 1961(1)). To set forth a RICO claim, a Plaintiff must allege a violation of two or more predicate acts. *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir.) (citing 18 U.S.C. § 1961(5)), *cert. denied*, 138 S. Ct. 282 (2017). Plaintiff does not specifically identify what predicate acts Defendants are alleged to have violated. On review of the Complaint, the only predicate act which Plaintiff even remotely alleges is bribery: once in a passing mention in a heading, Doc. 1 at 11, and a second time in a vague reference to the City employees' "pay for play agenda," Doc. 1 ¶ 35 ("Whether this was done purposefully through the corruption of the city or benign neglect due to city employees accepting this through a 'pay for play' agenda which is now being investigated by the Department of Justice and also the N.Y. County D.A.'s Office; or the result of criminal ineptitude or incompetence, it does not matter."). Such vague, conclusory, and speculative allegations are insufficient to plausibly allege a violation of two RICO predicate acts.[11] *See Iqbal*, 556 U.S. at 678 (stating that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[11] The Court also notes that while Plaintiff has not specified under which provision of Section 1962 it brings its RICO claim, all of those provisions require some "affect[] on interstate or foreign commerce," 18 U.S.C. § 1962(a)-(c). While "that [affect] need not be great," *United States v. Barton*, 647 F.2d 224 (2d Cir.1981); *see also United States v. Miller*, 116 F.3d 641 (2d Cir.1997), *cert. denied*, 524 U.S. 905 (1998) (concluding *de minimis* effect on interstate commerce is sufficient under RICO), Plaintiff has not alleged that there was any effect on interstate or foreign commerce here.

19

suffice."); *Purchase Real Estate Grp. Inc. v. Jones*, No. 05 CIV. 10859 (LAP), 2010 WL 3377504, at \*8 (S.D.N.Y. Aug. 24, 2010) ("While courts have made an exception to the particularity requirements and have allowed 'allegations [to] be based on information and belief when facts are peculiarly within the opposing party's knowledge,' this exception 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations,' especially in the context of RICO claims.") (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)); *see also Wilson v. Toussie*, 260 F. Supp. 2d 530, 537 (E.D.N.Y. 2003) ("[I]n civil RICO actions, the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency." (internal quotation marks omitted)); *see also* Fed. R. Civ. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  Accordingly, Count 3 is hereby dismissed.

## V. Conclusion[12]

For the reasons stated above, Defendants' motion to dismiss is GRANTED.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 14, and close the case.

It is SO ORDERED.

Dated: January 10, 2018
  New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[12] Plaintiff "asserts the doctrine of equitable estoppel against Defendants for their [alleged] fraud in this case." Doc. 1 ¶ 82; *see* Doc. 18 at 23–24. "Equitable estoppel applies when a party, by its conduct, including language, acts or silence, knowingly makes a representation or conceals material facts which it intends or expects will be acted upon by the other party." *State of New York v. United Parcel Serv., Inc.*, 160 F. Supp. 3d 629, 646 (S.D.N.Y. 2016). Plaintiff's equitable estoppel claims fail for two reasons. First, as a general matter, the doctrine of estoppel may not be asserted against a municipality. *See Matter of Hamptons Hosp. & Med. Ctr. v. Moore*, 52 N.Y.2d 88, 93 (1981) ("The doctrine of estoppel is not applicable to the State acting in a governmental capacity."); *see also LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) ("[P]rinciples of laches or estoppel do not bar a municipality from enforcing ordinances that have been allowed to lie fallow."); *City of New York v. City Civil Serv. Comm'n*, 60 N.Y.2d 436, 449 (1983) ("[E]stoppel may not be applied to preclude a State or municipal agency from discharging its statutory responsibility."). Second, Plaintiff has not alleged that *he* relied on any representation or omission made by the City. *See Horn v. Politopoulos*, 628 F. App'x 33, 35 (2d Cir. 2015) (noting that equitable estoppel may be invoked where a party has been "induced by fraud, misrepresentations or deception" to act against their interest); *Okie v. Village of Hamburg*, 196 A.D.2d 228 (1994) (finding equitable estoppel inapplicable in part because "[t]his [wa]s not a case where plaintiffs made a specific inquiry for information peculiarly within the municipality's knowledge and received erroneous information upon which they relied."); *see also United States v. Wharton*, 514 F.2d 406, 410 (9th Cir. 1975) (finding doctrine of estoppel could be applied against government where "affirmative misconduct on the part of . . . officials" was relied on by plaintiff). Accordingly, the Court concludes that there is no proper basis on which to apply the doctrine of equitable estoppel here.